ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LAVANCE TURNAGE ) | |
| ) | CASE NO. 4:03CV1654 |
| Petitioner, ) | |
| ) | |
| v. ) | Judge John R. Adams |
| ) | |
| JULIUS C. WILSON, ) | MEMORANDUM OPINION & ORDER |
| ) | |
| Respondent. ) | |
| ) | |

On August 6, 2003, following his conviction and sentence, Petitioner LaVance Turnage filed his petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. Respondent Julius Wilson, Warden, filed his Return of Writ on January 16, 2004. Magistrate Judge James S. Gallas issued his Report and Recommendation (Report) on June 13, 2005. In his Report, the Magistrate Judge recommended that Turnage's petition be denied. On December 20, 2005, the Petitioner timely filed his Objections to the Report.[1] This Court, after having reviewed Petitioner's objections, hereby adopts the Report and dismisses Turnage's petition.

### I. Facts & Procedure

Following a jury trial, the Mahoning County Court of Common Pleas sentenced Turnage

---

[1] Generally, a petitioner must file any objections to the magistrate's report within 10 days. This Court first granted Turnage a 30-day extension on June 23, 2005 (see ECF Doc. #27). On July 15, 2005, the Court granted Turnage another 30-day extension (see ECF Doc. #29). On August 15, 2005, Turnage filed a motion to dismiss his petition without prejudice (see ECF Doc. #30). The Court denied the motion on November 17, 2005 and gave Turnage 30 days to file his Objections (see ECF Doc. 33). Under the mailbox rule, Turnage's Objections were considered filed on the date he mailed the document. See Houston v. Lack, 487 U.S. 266, 274 (1988).

on June 22, 1999 to a term of 10 years to life imprisonment for engaging in a pattern of corrupt activity, aggravated murder, and conspiracy to commit aggravated murder.  The state convictions followed Turnage's guilty pleas in U.S. District Court for violation of federal RICO statutes for offenses similar to those outlined in the state indictment.  Part of the scheme for which Turnage was convicted involved the attempted murder of Paul Gains, then the newly-elected Mahoning County Prosecutor.

Turnage unsuccessfully appealed his state convictions to the Ohio Court of Appeals for the Seventh Judicial District.  After the Ohio Supreme Court denied him leave to appeal, Turnage timely filed his petition for a Writ of Habeas Corpus on August 6, 2003.  Turnage alleged the following errors: (1) the trial court erred by not transferring venue due to prejudicial pretrial publicity; (2) the state violated the Double Jeopardy Clause when it tried him on substantially the same charges of which he was convicted in federal court; and (3) the trial court's cumulative errors denied him a fair trial.

The Magistrate Judge rejected all three claims, finding that Turnage did not show that the state courts' adjudication of his claims resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, as required by 28 U.S.C. § 2245(d)(1) and (2).[2]  Specifically, the Magistrate Judge found that the pretrial publicity claim failed because the jurors who expressed bias were removed and Turnage did not establish that the level of press coverage created a presumption of prejudice.  The magistrate also rejected Turnage's Double Jeopardy claim, explaining that the rare "sham" prosecution exception to the Dual Sovereignty Doctrine did not apply because the state called its own independent witnesses

---

[2] For a full discussion of the case's procedural history, as well as an in depth discussion of the facts on which this case is premised, see the Magistrate Judge's Report, ECF Doc. # 25.

2

at Turnage's trial and state agents independently investigated the assault on Gains. Finally, the Magistrate Judge denied Turnage's cumulative-errors claim. The state appellate court concluded that the doctrine of cumulative error did not apply because Turnage failed to meet his burden under state law in demonstrating that the alleged problems constituted at least harmless error. The Magistrate Judge rejected the cumulative-errors claim, explaining that none of the state appellate court's conclusions were contrary to or involved an unreasonable application of federal law.

## II. Law & Analysis

Under Federal Rule 72(b) and 28 U.S.C. § 636, this Court is required to review *de novo* the portion of the Magistrate Judge's Report to which a specific objection was made. A party who fails to file an objection waives the right to appeal. U.S. v. Walters, 638 F.2d 947, 950 (6th Cir. 1981). Filing a general objection is akin to filing no objection at all. Howard v. Sec'y of Health and Human Services, 932 F.2d 505, 508-09 (6th Cir. 1999).

A. Turnage's First Objection

Turnage contends that clearly established federal precedent required the trial court to change venue due to prejudicial pretrial publicity. Specifically, Turnage argues that the state appellate court's decision to affirm the denial of his motion to change venue was contrary to Irvin v. Dowd, 366 U.S. 717 (1961), Rideau v. Louisiana, 373 U.S. 723 (1963), and Sheppard v. Maxwell, 384 U.S. 333 (1966), which collectively hold that, in extreme cases, pretrial publicity can be so pervasive and prejudicial as to create a presumption that the defendant cannot receive a fair trial without a change of venue. See Ritchie v. Rogers, 313 F.3d 948, 952 (6th Cir. 2002) (explaining the holdings of the "well-known trilogy of 'presumed prejudice cases'"). Turnage

3

claims he is entitled to the presumption because the community was well aware of the facts underlying his state indictment and that he had been convicted in federal court on similar charges.  Turnage also contends that he was actually prejudiced because, during group voir dire, a potential juror said that Turnage should be "fried" and another said that she did not understand why Turnage was being tried "again."  This Court, however, agrees with the Magistrate Judge that Turnage's pretrial publicity claim fails.

Presumed prejudicial publicity occurs only in the rare case where the "the trial atmosphere [has] been utterly corrupted by press coverage."  Murphy v. Florida, 421 U.S. 794, 798 (1975).  The petitioner bears the burden of showing utter corruption of the proceedings.  See Dobbert v. Florida, 432 U.S. 282, 303 (1976) (petitioner proved only that jury pool was well aware of the case).  The petitioner does not meet his burden simply by showing that the community has "extensive knowledge" of the alleged crimes or criminal.  Id.  If the petitioner cannot establish presumed prejudice, he must show actual prejudice if he is to succeed in his claim that he did not receive a fair trial.  Ritchie, 313 F.3d at 956.  To determine whether actual prejudice occurred, reviewing courts examine the nature of the voir dire and media coverage.  Id.

Here, the state appellate court did not reach a decision that was contrary to or involved an unreasonable application of clearly established federal precedent.  Turnage did not meet his burden of demonstrating presumed prejudice because, as noted by the state appellate court, Turnage did not submit any evidence regarding media coverage.[3]  Further, Turnage's claim fails

---

3   Instead, Turnage and his co-appellants relied on conclusory statements, such as "this 'Mob trial' was one of the most publicized trials in the history of Mahoning Valley."  State v. Riddle, et al., No. 99178, 2001 WL 1647211 at *10 (Ohio App. Dec. 18, 2001).

4

because, at most, he has shown that the community had extensive knowledge of his crimes and convictions.  Such a showing, however, does not create a presumption of prejudice.  Dobbert, 432 U.S. at 303.

Turnage also has not demonstrated actual prejudice.  As noted by the state appellate court, the potential juror who said that Turnage should be "fried" was not seated on the jury.  Turnage argues that the statement actually harmed him because it occurred during group voir dire.  However, the trial court is not required to conduct individual voir dire, even in highly publicized cases.  Ritchie, 313 F.3d at 962.

Turnage also complains of a seated juror who, during voir dire, admitted to having heard media reports about the case but later said that she had not formed an opinion as to Turnage's guilt or innocence and could render an impartial verdict.  Turnage argues that, because the negative pretrial publicity *presumptively* deprived him of a fair trial, any juror's claim of impartiality cannot be believed.  However, as previously noted, Turnage did not prove that the publicity surrounding his case presumptively prejudiced him.  Further, "[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented at trial."  E.g. Irvin, 366 U.S. at 723 (citations omitted).

    B.    Turnage's Second Objection

Turnage also specifically objects to the Magistrate Judge's recommendation that this Court dismiss his Double Jeopardy claim.  Turnage argues that while the Dual Sovereignty Doctrine generally permits the federal and state governments to prosecute a defendant for the same offense, the doctrine does not apply when the state prosecution is a "sham" directed by federal agents.  Turnage alleges that his state trial was a "sham" because (1) federal authorities

convinced the state to not charge key prosecution witnesses; (2) state agents cooperated with federal authorities in the investigation; (3) County Prosecutor Gains ceded control of the prosecution to the federal government; and (4) the state did not call to testify any law enforcement officers who had knowledge of the facts of Turnage's case. This Court finds, however, that Turnage's Double Jeopardy claim must be dismissed.

First, there is no clearly established federal precedent that forbids a federal prosecutor from negotiating with state authorities a plea agreement for a prosecution witness.[4] On the contrary, at least one federal circuit has held that "[d]ouble jeopardy does not prevent federal prosecutors from encouraging their state counterparts to pursue plea bargains[.]" U.S. v. Zone, 403 F.3d 1101, 1105 (9th Cir. 2005).

Second, while state and federal prosecutors certainly cooperated with each other here, established federal precedent clearly holds that cooperation and joint investigations does not amount to a "sham" prosecution. Bartkus v. Illinois, 359 U.S. 121 (1959). Further, nothing before this Court suggests the state appellate court unreasonably applied Bartkus to the facts.

Third, the state appellate court did not unreasonably apply clearly established federal precedent in finding that Gains did not cede his authority to the federal government. The court explained that, to avoid a conflict of interest created when Turnage's accomplices attacked him, "Gains merely surrendered the decision to appoint a special prosecutor to the federal government." Riddle, 2001 WL 1647211 at *4. Turnage has failed to demonstrate how Gains' delegation created a "sham" prosecution, particularly when state prosecutors tried Turnage on

---

[4] In addition, the state appellate court explained that the plea negotiations between federal and state prosecutors occurred only at the witnesses' insistence, thus negating Turnage's argument that the state ceded control over the state trial to the federal government.

the state charges with the help of state agents who had conducted their own independent investigations.  See U.S. v. Raymer, 941 F.2d 1031, 1037 (10th Cir. 1991); U.S. v. Liddy, 542 F.2d 76, 79 (D.C. Cir. 1976) (explaining substantial burden is on petitioner to show state officials had little or no control over state proceedings).  Further, while Gains testified that he gave the federal government "carte blanche," Turnage has not met his substantial burden in demonstrating that Gains gave federal authorities so much control over the case as to convert it to a "cover for a federal prosecution."  See Bartkus, 359 U.S. at 123-124; Raymer, 941 F.2d at 1037; Liddy, 542 F.2d at 79.  At most, Turnage has shown that Gains gave federal prosecutors complete control over whether the federal government could secure the appearances of key witnesses with promised plea bargains -- a delegation that does not amount to a "sham" prosecution.  See id.

Finally, the state appellate court found that the state did call its own independent witnesses and that these witnesses did have knowledge of the facts of the case, thus refuting Turnage's claim that the state's involvement consisted only of supplying two prosecutors to the case.[5]  As such, this Court cannot say that the state appellate court decision involved an unreasonable application of clearly established federal precedent to the facts of Turnage's case.

Based on the above reasons, this Court finds that the state appellate court's decision to reject Turnage's claim of a "sham" prosecution was neither contrary to nor involved an unreasonable application of clearly established federal precedent.

C. Turnage's Third Objection

---

[5] The witnesses included the following: a Youngstown police officer, who testified that he was the first to arrive at the scene where Turnage's attorney had been shot; the Mahoning County deputy coroner; and an agent from the Ohio Bureau of Criminal Identification and Investigation, who testified about his investigation into the assault of Gains.

Turnage's third objection to the Magistrate Judge's Report is a general objection. A party may not file a general objection to the entirety of the magistrate's report. Howard v. Sec'y of Health and Human Services, 932 F.2d 505, 508-09 (6th Cir. 1999). An objection must "be specific in order to focus the busy district court's attention on only those issues that [are] dispositive and contentious." Id. at 509. If a party generally objects to the magistrate's report, it has the same effect as a failure to object.

Here, Turnage's third objection states that "the numerous errors argued in this Objection cumulatively prejudiced the trial to a fair and just result." However, Turnage never indicates in his Objection what those errors may have been. For an objection to be sufficiently specific, the petitioner must direct "the district judge's attention to specific issues decided by the magistrate contrary to [the petitioner's] position." Neuman v. Rivers, 125 F.3d 315, 323 (6th Cir. 1997). By failing to even name the errors of which he complains, Turnage has not directed this Court to the issues about which he and the Magistrate Judge disagree. Having raised no specific objection, therefore, this Court adopts the reasoning of the Magistrate Judge and finds that Turnage was not deprived a fair trial as a result of cumulative errors.

### III. Conclusion

For the reasons set forth herein, this Court ADOPTS the Report of the Magistrate Judge. Turnage's argument that the state court violated clearly established precedent is not well-taken. Accordingly, his writ is hereby DENIED.

IT IS SO ORDERED.

|  August 14, 2005  |  /s/ John R. Adams  |
|---|---|
| Date | John R. Adams |
| | U.S. District Judge |